IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMI GRADY, | : | No.  4:CV 06-558 |
| | : | |
| Plaintiff, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| CRACKER BARREL OLD COUNTRY | : | |
| STORE, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### July 2, 2007

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court is Defendant Cracker Barrel Old Country Store, Inc.'s Motion for Summary Judgment (doc. 26)(the "Motion") filed on May 1, 2007.

For the reasons that follow, the Motion shall be granted.

**PROCEDURAL HISTORY**:

Plaintiff Tami Grady ("Plaintiff" or "Grady") commenced the instant action by filing a complaint with this Court on March 16, 2006.  (Rec. Doc. 1).  The two count complaint asserts claims of sex discrimination, sexual harassment, retaliation and retaliatory harassment in violation of Title VII of the Civil Rights act of 1965,

1

as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII") (Count I) and the

Pennsylvania Human Relations Act, as amended, 43 Pa. Cons. Stat. § 951, *et seq.*

("PHRA")(Count II).  On May 16, 2006 Defendant Cracker Barrel Country Store,

Inc. ("Defendant" or "Cracker Barrel") filed an answer with affirmative defenses.

(Rec. Doc. 7).

Following the close of discovery, the Defendant filed the instant Motion.

The Motion has been fully briefed by the parties and is therefore ripe for our

review.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

FED .R. CIV. .P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335,

340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351,357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could

draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d

Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a

genuine issue of material fact.  <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323

(1986).  This may be met by the moving party pointing out to the court that there is

an absence of evidence to support an essential element as to which the non-moving

party will bear the burden of proof at trial.  <u>Id</u>. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is

made and properly supported, the non-moving party must then show by affidavits,

pleadings, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  The United States Supreme

Court has commented that this requirement is tantamount to the non-moving party

making a sufficient showing as to the essential elements of their case that a

reasonable jury could find in its favor.  <u>Celotex Corp.</u>, 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon

conclusory allegations in its pleadings or in memoranda and briefs to establish a

genuine issue of material fact."  <u>Pastore v. Bell Tel. Co. of Pa.</u>, 24 F.3d 508, 511

(3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the

light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."

<u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir.

1992), <u>cert</u>. <u>denied</u>, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**FACTUAL BACKGROUND**:

   **1.    Defendant's Policies**

Although Plaintiff disputes that they was implemented in an "effective or meaningful way," at all times during Plaintiff's employment, Defendant maintained an Equal Opportunity Policy prohibiting all forms of discrimination, including sex discrimination, as well as a Harassment and Discrimination Policy. (Defendant's Statement of Undisputed Material Facts ("DSF"), ¶¶1,3; Plaintiff's Counter-Statement of Facts ("PCS"), ¶¶1,3). Defendant also maintained an Open Door Policy, which Plaintiff alleges was not implemented in an effective or meaningful way. (DSF, ¶5, PCS, ¶5).

Defendant also maintained an Asset Protection Policy, which provided that using, removing, or consuming any company merchandise without properly paying

4

for it would result in discipline.  (DSF, ¶8).  Defendant also maintained an Employee Meals Policy which provided that employees were permitted to have one meal at half price for each shift worked, but that all other food or beverages consumed by employees, with the exception of coffee or tea, must be paid for at full menu price. (DSF, ¶¶9-10).  Plaintiff disputes the relevancy of these policies because she alleges that she did not consume any food without paying for it and therefore did not violate these policies.  (PCS, ¶8, 10).

During Plaintiff's employment, Defendant also maintained a Nonsolicitation Policy which prohibited workers from "solicitation or distribution of written materials or other items during working time in work areas." (DSF, ¶¶11-12).

All of the aforementioned policies are contained in the Cracker Barrel Employee Handbook, which Plaintiff received on her first day of work.  (DSF, ¶¶13-14; PCS, ¶¶13-14).  To that end, Plaintiff signed an acknowledgment form that she received a copy of the Employee Handbook.  (DSF, ¶15, PCS, ¶15).  Plaintiff disputes Defendant's contention that she received training relevant to the Defendant's policies and practices on her first day of work.  She argues that she received a handbook containing statements that "were not true, were contradictory and misleading in their omissions." (DSF, ¶19, PCS, ¶19).

It is undisputed that Cracker Barrel store managers have the ultimate

authority to investigate and resolve claims of sexual harassment.  (Plaintiff's Statement of Additional Facts ("PSAF"), ¶15; Defendant's Response to Plaintiff's Statement of Additional Facts ("DR"), ¶15).  That manager maintains discretion in how to approach a sexual harassment investigation and may disregard the recommendation of Employee Relations. (PSAF, ¶18; DR, ¶18).  Managers are not required to document investigations in any way.  (PSAF, ¶24; DR, ¶24).

## 2.   Plaintiff's Employment with Defendant

Defendant hired Plaintiff as a server at its Frackville, Pennsylvania location in January 2003.  Plaintiff's job duties included "taking orders, getting drinks, serving the food, giving [customers] boxes and giving [customers] their checks, [and] cleaning."  During her employment, Plaintiff officially was a part-time employee but she asserts she often sought extra shifts and typically worked four to seven shifts per week, totaling 25 to 40 hours per week. (DSF, ¶¶16-18; PCS, ¶¶16-18).

At the time Plaintiff became employed by Defendant, Michael Kishbaugh ("Kishbaugh") was the General Manager of the Frackville store.  Kishbaugh remained the General Manager of the Frackville Store until September 2003 when he transferred to the Wilkes-Barre, Pennsylvania store.  Eric Bartholomew ("Bartholomew") replaced Kishbaugh as the General Manager of the Frackville

store in September 2003.  At the time Plaintiff became employed by Defendant,

Kathleen Fago ("Fago") was the Retail Manager of the Frackville store.  Fago

remained the Retail Manager of the Frackville store until August 2003 when she

transferred to the Wilkes-Barre, Pennsylvania store.  (DSF, ¶¶20-24; PCS, ¶¶20-

24).

### 3.   Plaintiff's Complaint and Defendant's Investigation

On March 31, 2003, Plaintiff complained to Fago and Associate Manager

Kim Shatalsky ("Shatalsky") that Associate Manager David Pavalko ("Pavalko")

made her feel uncomfortable at work by, *inter alia*, looking at her and making

comments to her that she felt were inappropriate.  (DSF, ¶25; PCS, ¶25).  Fago and

Shatalsky told Plaintiff to write down her recollections regarding Pavalko's alleged

behavior and to write down a list of witnesses who observed the behavior.  Fago

and Shatalsky told Plaintiff that there would be no retaliation against her because

of her complaint.  (DSF, ¶¶27-28; PCS, ¶¶27-28).

The next day, Fago brought Plaintiff's complaint to Kishbaugh's attention.

(DSF, ¶29; PCS, ¶29).  Plaintiff disputes the Defendant's allegation that Kishbaugh

and Fago "immediately began the process of scheduling interviews with the

witnesses Plaintiff identified." (DSF, ¶30; PCS, ¶30).  Kishbaugh and Fago also

interviewed Plaintiff regarding her allegations for approximately twenty minutes to

a half an hour.  (DSF, ¶31; PCS, ¶31).  Kishbaugh testified that during the

interview he asked her to make a written statement of what occurred and to name

any witnesses to aid in their investigation.  Kishbaugh testified that he told Plaintiff

he would interview Pavalko as part of the investigation.  (DSF, ¶¶42-43;

Kishbaugh Deposition, p. 64).

Following his initial meeting with Plaintiff, Kishbaugh informed Cracker

Barrel's Employee Relations Department of Plaintiff's complaint.  (DSF, ¶44;

Kishbaugh Dep., p. 72). Kishbaugh testified that he contacted and spoke to all of

the witnesses identified by Plaintiff but that none of them had witnessed the

behavior or incidents that Plaintiff complained of.  (DSF, ¶45; Kishbaugh Dep., pp.

72, 86, 98, 103-105).  Plaintiff alleges that Kishbaugh did not interview all of the

witnesses that she had identified, nor did he interview them in a proper way so as

to properly investigate her claims.  (PCS, ¶45).

Kishbaugh and Fago interviewed Pavalko regarding Plaintiff's complaints.

Kishbaugh testified that he believed they addressed with Pavalko all of Plaintiff's

allegations and he denied all of the allegations.  (DSF, ¶¶46-47; Kishbaugh Dep.,

pp. 12-124, 128).  In his deposition, Pavalko essentially denied Grady's allegations

or claimed he did not recall whether or not a particular incident occurred.  (Pavalko

Deposition, pp. 115-126).

Kishbaugh and Fago testified that they reviewed Cracker Barrel's Harassment and Discrimination Policy with Pavalko.  (Kishbaugh Dep., pp. 152-153; Fago Deposition p. 113).  Pavalko received a copy of the policy during this interview. (Kishbaugh Dep., pp. 152-153).

Kishbaugh testified that after investigating Plaintiff's complaint, he came to the conclusion that there was "no corroborating evidence that anything inappropriate took place."  (Kishbaugh Dep., p. 142).  Kishbaugh further testified that he told Plaintiff that there was no corroborating evidence to prove her allegations occurred and that he did a "policy review" with Pavalko. Kishbaugh also testified that he told Plaintiff that no retaliation would result from her complaint.  (Kishbaugh Dep., p. 166).  Plaintiff gave Kishbaugh additional people who were potential witnesses and Kishbaugh agreed to look into the matter further. (Grady Dep., p. 203).

A few days after this meeting, Kishbaugh again met with Plaintiff and told her that the investigation was at a standstill because he had found no evidence to support Plaintiff's claims.  Kishbaugh indicated to Plaintiff that he was closing the investigation. (Grady Dep., p. 205).  Kishbaugh again indicated to Plaintiff that there would be no retaliation against her for the allegations against Pavalko. (Grady Dep., p. 207).

At her deposition, Plaintiff indicated that after she brought her complaints about Pavalko to Kishbaugh, Pavalko's "sexual comments and persistentness stopped [*sic*]."  (Grady Dep., p. 230).

**4.      Plaintiff's Allegations against Pavalko**

Plaintiff testified that the first time she felt "discriminated" against by Pavalko was on February 25, 2003, the day of her PAR 1 evaluation.  Plaintiff testified she felt "discriminated" against on the basis of a series comments made to her by Pavalko during her PAR 1 evaluation.  (Plaintiff's Deposition, pp. 173-176). Plaintiff testified that after Pavalko had concluded evaluating her, he asked her "what do you think of me?"  Plaintiff alleges that at first she thought Pavalko was asking her what she thought of him as a manager and she responded "I think you're nice." (Grady Dep., p. 175).  Plaintiff testified that Pavalko responded that he was asking the question in a 'different way,' to which she responded, "you're married." Pavalko allegedly responded that "married men are the best . . . You can have your way with them and get rid of them."  (Grady Dep., p. 176).

Plaintiff testified that after the PAR 1 evaluation, Pavalko would repeatedly ask her if she had "thought about what he had said," and she would tell him "no" and that "you're married."  Plaintiff testified that every time she responded "no" to Pavalko, he would try to change her mind.  Plaintiff testified that he asked her to

go to his house with him and that his wife would be at work.  (Grady Dep., p. 232).

Plaintiff further testified that he would make these overtures to her when no

witnesses were listening or nearby.  (Grady Dep., p. 233; DSF, ¶34).  Plaintiff also

testified that Pavalko would come up behind her and whisper to her whether she

had "thought about" what he had said.  (Grady Dep., p. 233).

Plaintiff alleges that every time Pavalko was the manager on duty and her

shift ended prior to the close of the store, Pavalko would walk her from the store to

her truck.  She alleges that this occurred "maybe over a dozen" times and that she

"would open the driver's side door to get in and sit there, and he would stand so I

couldn't close the door and just persistently ask me if I thought about it, if I wanted

my feet rubbed.  I would say I have to go."  (Grady Dep., p. 234).

Plaintiff testified that she felt the more she rejected Pavalko's overtures, the

more persistent he became.  Plaintiff began to avoiding him because she "didn't

want to be alone in any part of the restaurant because I was afraid he would come

up and proposition me with a question that I didn't want to have to answer."  She

also testified that she "felt if I gave him the wrong answer because he said he could

make things easy for me that if I didn't give him an answer he didn't want to hear,

he would make things hard [*sic*]." (Grady Dep., p. 235).

Plaintiff alleges that when her shift was near completion she would ask

Pavalko if she could stop "taking tables," but that he would not let her leave on time because he "wanted to keep [her] around"  Plaintiff testified Pavalko told her he "wanted to keep me around so he could look at me."  (Grady Dep., p. 237). During these periods, Plaintiff remained on the clock and was paid accordingly. (Grady Dep., pp. 238, 243).

### 5.    **Plaintiff's Termination**

As previously referenced, Cracker Barrel maintained a policy prohibiting employees from eating food that they did not pay for, aside from their allotted half-price meal per shift.  In late 2002, Defendant's Operations Department published a statement entitled, "It's Not Just a Piece of Candy," which warned that employees may be disciplined and terminated for removing or using any Cracker Barrel asset, regardless of value, without paying for it.  (DSF, ¶¶57-60).

Fellow Frackville server Cynthia Rhoads ("Rhoads") testified that Plaintiff was the "worst offender" of Cracker Barrel's general rule that employees could not eat food without first paying for it. (Rhoads Deposition, p. 120).  Rhoads reported to Bartholomew that Grady  would "pick[] little pieces off the biscuits and the corn bread and . . . eat them." (Rhoads Dep., p. 79).  Rhoads also testified that she told Bartholomew that Plaintiff would repeatedly "pick up . . . croutons with her finger" in the salad area and "dip it in the salad dressing and pop it in her mouth."

(Rhoads Dep., p. 80).

Bartholomew testified that shortly before Grady's termination, he observed her eating croutons.  Bartholomew testified that he pulled her to the side and said to her, "did you ask anybody if you could have a crouton, and her reply was no.  I said, don't let me see you stealing anymore food again or I will fire you." (Bartholomew Deposition, pp. 82-83).  Plaintiff disputes that Bartholomew ever gave her an oral warning that she would be terminated if she was caught stealing food again.  (PCS, ¶66).  Bartholomew testified that at the time he observed Grady eating croutons, he was unaware of her prior complaints against Pavalko. (Bartholomew Dep., p. 47).

After the incident when Bartholomew witnessed Grady eating croutons, Rhoads approached Bartholomew and told him that she saw Grady take a french fry off of a guest's plate and eat it.  (Bartholomew Dep., p. 87).  Bartholomew requested that Rhoads put her observation in writing, which Rhoads did. (Bartholomew Dep., p. 87; Rhoads Dep., p. 114, ex. P-14). Bartholomew asked associate manager Richard Casaldi ("Casaldi") to go with Rhoads so she could fill out a statement about the french fry.  (Bartholomew Dep., p. 88).

Casaldi then asked Grady whether she ate a french fry off of a guest's plate, which she denied.  Casaldi told Bartholomew that Grady *did* admit that she had

eaten a crouton.  (Bartholomew Dep., pp. 88-89).   Bartholomew testified that after

speaking with Casaldi, he met with Grady and Casaldi in the office.  Bartholomew

testified that he told Grady that Rhoads had told him she had seen Grady take a

french fry off of a customer's plate and eat it.  Plaintiff "denied taking a french fry

and explained that the only croutons she ate were ones that she had paid for earlier

when she purchased a meal." (Complaint, ¶60b).  Bartholomew testified that he

reminded Plaintiff of his prior warning to her regarding eating croutons without

permission or payment, which Plaintiff acknowledged she remember.

Bartholomew then terminated Plaintiff's employment because he believed she stole

the croutons she said she had eaten.  (Bartholomew Dep., p. 90).  Bartholomew did

not first consult with District Manager Jeff Bader or Employee Relations prior to

terminating Plaintiff's employment.  (Bartholomew Dep., pp. 95, 114).


Plaintiff admits that she does not know who replaced her after her

employment with Cracker Barrel was terminated.  (DSF, ¶115; PCS, ¶115; Grady

Dep., p. 281).

### 6.    PHRC Investigation and Findings

On or about May 30, 2003, Plaintiff filed a complaint with the Pennsylvania

Human Relations Commission ("PHRC") and Equal Opportunity Commission

14

("EEOC") alleging sexual harassment. (DSF, ¶90; PCS, ¶90). On June 2, 2003 the PHRC mailed a letter to Plaintiff acknowledging receipt of questionnaires she had completed regarding her allegation and stating that the PHRC would be unable to draft a complaint for her for approximately two months. (DSF, ¶91; PCS, ¶91). There is no record that the complaint was ever served on Defendant, or that Defendant ever was made aware of the complaint. (DSF, ¶92; PCS, ¶92). In October 2003, the PHRC mailed Plaintiff a letter containing a draft complaint for her review. (DSF, ¶93; PCS, ¶93). On or about October 10, 2003, Plaintiff filed an amended complaint at the PHRC and EEOC. (DSF, ¶94; PCS, ¶94). Plaintiff's amended complaint was served on the Defendant on November 25, 2003, sixteen days after Plaintiff's termination. (DSF, ¶95; PCS, ¶95).

On or about January 6, 2004, nearly two months after her termination, Plaintiff filed a second amended complaint with the PHRC and EEOC alleging sexual harassment, sex discrimination and retaliation. On March 23 and April 13, 2005, the PHRC send Plaintiff letters stating that over one year had passed since she had filed her complaints and that she consequently had the right to sue; the letters contained no determination that unlawful discrimination or harassment had occurred. On December 28, 2005 and January 31,2 006, the EEOC issued Notices of Right to Sue to Plaintiff at her request; the notices contained no determination

that unlawful discrimination or harassment had occurred. (DSF, ¶¶96-98; PCS, ¶¶96-98).

### 7.    Other Terminations from Cracker Barrel

Fellow Frackville server Beth Wapinsky was fired from Cracker Barrel by Bartholomew because he believed she stole drinks.  (DSF, ¶84).  Bartholomew terminated Beth Wapinsky because "she accidentally charged a customer for a water which is zero instead of a half pint of milk, which is 89 cents."  (DSF, ¶86)(Wapinsky Deposition, p. 88).

Leonard Sweet was also fired from the Frackville Cracker Barrel for stealing food.  (DSF, ¶87).  Sweet was fired for stealing and eating lettuce.  (DSF, ¶88; Fago Deposition, pp. 133-134).

## DISCUSSION:

### A.    Hostile Work Environment Claim

Defendant moves the Court to enter summary judgment in its favor on Plaintiff's hostile work environment claim.  To establish a hostile work environment claim, Plaintiff must establish that: (1) she suffered intentional discrimination because of her sex; (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected her; (4) that the discrimination would have detrimentally affected a reasonable person of the same

sex in that position; and (5) there exists a basis for employer liability.  See Tucker

v. Merck & Co, Inc., 131 Fed. Appx. 852, 858 (3d Cir. 2005); Jensen v. Potter, 435

F.3d 444, 449 (3d Cir. 2006).

Defendant argues that Plaintiff's claim fails because she cannot establish that

the work environment was objectively hostile. "Conduct that is not severe or

pervasive enough to create an objectively hostile work environment – an

environment that a reasonable person would find hostile or abuse – is beyond Title

VII's purview."  Shramban v. Aetna, 115 Fed. Appx. 578, 580 (3d Cir. 2004).

"Simple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the 'terms and conditions of

employment.'"  Shramban, 115 Fed. Appx. at 580 (quoting Faragher v. City of

Boca Raton, 524 U.S. 775, 788 (1998)).  When determining whether a work

environment is objectively hostile, the Court must consider the totality of the

circumstances.  Doty v. Pike County Corr. Facility, 2006 U.S. Dist. LEXIS 72093,

*33 (M.D.Pa. Oct. 3, 2006)(Caputo, J.)  "Circumstances to consider 'may include

the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'"  Id. (quoting

Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Furthermore, to establish an

objectively hostile work environment, Plaintiff must establish that the alleged

harassment was "serious and tangible enough to alter [her] compensation, terms,

conditions, or privileges of employment." Hegyes v. United States Steel Corp.,

2007 U.S. Dist. LEXIS 5368, *52 (W.D.Pa. Jan. 25, 2007)(quoting Storey v. Burns

Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004)).

        While Plaintiff was subjected to advances and remarks by Pavalko, we find

that under the totality of the circumstances, the alleged conduct is not sufficient to

establish an objectively hostile work environment.  It is certain that Pavalko did

make overtures to Plaintiff, which she found appropriately found to be offensive.

However, the incidents advanced by Plaintiff occurred intermittently over a one-

month period and included Pavalko sometimes making inappropriate sexual

comments to her, walking her to her car at the end of her shifts, and generally

making her feel uncomfortable.   Moreover, Plaintiff testified that the behavior

generally stopped after Kishbaugh met with Pavalko.  Plaintiff testified that

Pavalko never touched her in an inappropriate manner, but only whispered in her

ear.  When viewing the totality of the circumstances, as we are required, we do not

find that Plaintiff has established Pavalko's conduct to be sufficiently "severe and

pervasive" to establish a *prima facie* hostile work environment claim.[1]  Summary

judgment will accordingly be entered in favor of the Defendant on this claim.

## B.    Sex Discrimination Claim

Defendant moves the Court to enter summary judgment in its favor on

Plaintiff's sex discrimination claim.  It is well established that "[a]n employee can

defeat a motion for summary judgment by presenting either sufficient direct

evidence or sufficient indirect evidence of discrimination."  Salkovitz v. Pioneer

Elecs. (USA) Inc., 188 Fed. Appx. 90, 92 (3d Cir. 2006).  Plaintiff has offered no

direct evidence of sex discrimination.

To establish a *prima facie* case of sex discrimination based on indirect

evidence, Plaintiff must establish that: (1) she was a member of a protected class;

---

[1] See Shramban, 115 Fed. Appx. At 579-80 (summary judgment for employer where supervisor's repeated sexually suggestive comments and brushes against plaintiff's hand did 'not rise to a level sufficient to create a hostile work environment"); see also Heyges, 2007 U.S. Dist. LEXIS 5368 at *52-53 (summary judgment for employer where coworkers urinated near plaintiff's workstation and supervisors constantly shouted and swore at her and forced her to work overtime; see also Swanson v. Northwestern Human Serv., 2006 U.S. Dist. LEXIS 83846 (E.D. Pa. 2006)(summary judgment in favor of employer where supervisor grabbed plaintiff's buttocks on one occasion, told plaintiff he looked good in jeans and asked plaintiff on dates). See, e.g., McGraw v. Wyeth-Ayerst Lab., 1997 U.S. Dist. LEXIS 20813, at * 16-18 (E.D. Pa., Dec. 30, 1997) (supervisor's repeated requests for date, kissing Plaintiff without her consent, "forcing his tongue into her mouth" on one occasion, and touching Plaintiff's face not severe enough to create hostile work environment); Bauder v. Wackenhut Corp., 2000 U.S. Dist. LEXIS 4044, at *13 (E.D. Pa. March 23, 2000) (allegations that supervisor grabbed plaintiff's buttocks and male co-workers discussed the location of plaintiff's tattoos were insufficient to establish a hostile work environment); Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436 (E.D. Pa. Aug. 13, 2001) (no hostile work environment where plaintiff's supervisor patted employee on buttocks and breast on one occasion and propositioned her on several occasions).

(2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination.  See Johnson v. Keebler-Sunshine Biscuits, Inc., 2007 U.S. App. LEXIS 1914, *4-5 (3d Cir., Jan. 29, 2007).

Defendant does not dispute that (1) Plaintiff is a member of a protected class inasmuch as she is a female, (2) Plaintiff was qualified to be a server at Cracker Barrel; and (3) that she was terminated from that position.  Defendant argues that Plaintiff cannot establish her *prima facie* case of sex discrimination because she cannot prove that the circumstances of her termination give rise to an inference of discrimination.

To raise an inference of discrimination, Plaintiff must establish that she was replaced by someone outside the protected class, namely a male, or that similarly situated male employees were treated more favorably.  See Williamson v. Penn Millers Ins. Co., 2005 U.S. Dist. LEXIS 32827, *17-18 (M.D. Pa. 2005)(Munley, J.).  Plaintiff admitted in her deposition that she did not know who replaced her following her termination.  Moreover, it is undisputed that Leonard Smith, a similarly situated male employee, was terminated for stealing food, demonstrating that Cracker Barrel treated male employees who stole food in the same manner as Plaintiff was treated.  Plaintiff simply has not raised an inference that her

termination was based on her sex, and accordingly has not established a *prima
facie* case of sex discrimination.  Accordingly, Summary judgment will be entered
in favor of the Defendant on Plaintiff's sex discrimination claim.

### C.      Retaliatory Discharge Claim

Defendant moves the Court to enter summary judgment in its favor on
Plaintiff's retaliatory discharge claim.  To establish a retaliatory discharge claim,
Plaintiff must show that: (1) she engaged in protected activity; (2) that Defendant
took adverse employment action during or after her protected activity; and (3) a
causal link exists between the protected activity and the adverse action.  Griffin v.
De Lage Landen Fin. Servs., Inc., 2007 U.S. App. LEXIS 5800, *4 (3d Cir., Mar.
13, 2007).

It is undisputed that Plaintiff engaged in protected activity, namely lodging
complaints about Pavalko, and that the adverse employment action of her
termination occurred after the protected activity.  Defendant argues that Plaintiff's
claim fails because she cannot prove a causal connection between her protected
activity and termination.

First, Defendant submits that the lack of temporal proximity between
Plaintiff's complaint regarding Pavalko and her termination fails to create an
inference of a causal connection.  The United States Court of Appeals for the Third

Circuit has instructed that "when a long time has passed between the protected activity and the adverse event, the plaintiff needs to show intervening antagonism or retaliatory animus." <u>Griffin</u>, 2007 U.S. App. LEXIS 5800 at *4.  Plaintiff complained about Pavalko's conduct on March 31, 2002.  Seven months intervened between her complaint and termination on November 9, 2003.  The seven month span can properly be considered as too long of a time period to be "unduly suggestive" of unlawful retaliation by itself.[2]

Therefore, because the lack of temporal proximity between the complaint and termination does not support her retaliation claim in and of itself, Plaintiff must present additional evidence to establish a causal connection.  "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." <u>Davis v. Mothers Work, Inc.</u>, 2005 U.S. Dist. LEXIS 15890, *38 n. 25 (E.D. Pa., Aug. 4, 2005).  First, it is undisputed that Plaintiff's PHRC complaint was served on Defendant on November 25, 2003, *sixteen days after Plaintiff's termination*.  Next, Bartholomew, the sole decision maker regarding Plaintiff's termination, testified that he was unaware of the internal

---

[2] <u>See</u> <u>Morrison v. Carpenter Tech. Group</u>, 193 Fed. Appx. 148, 155 (3d Cir. 2006)(holding four month span between protected activity and adverse action "not sufficiently close to be 'unduly suggestive'" of retaliation); <u>see also</u> <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 115 (3d Cir. 2003)(temporal proximity of three weeks between complaint and termination letter was not considered to be unduly suggestive).

complaint she made about Pavalko seven months earlier – a complaint that was made when Bartholomew did not even work at the Frackville location.[3]   "It is not reasonable . . . to infer that an employer's reaction was motivated by an intent to retaliate for conduct which the employer's decisionmaker was not aware." Dean v. Kraft Foods N.Am., Inc., 2007 U.S. Dist. LEXIS 16911, *30 (E.D. Pa., Feb. 5, 2007)(quoting Moore v. City of Philadelphia, 461 F.3d 331, 352 (3d Cir. 2006)).

Furthermore, even assuming arguendo that Plaintiff could establish a *prima facie* retaliation claim, the Defendant could defeat Plaintiff's claim by articulating a legitimate, nondiscriminatory reason for her termination.  See Johnson, 2007 U.S. App. LEXIS 1914 at *4-5; see also Silver v. Am. Inst. of Certified Pub. Accountants, 2006 U.S. App. LEXIS 30035, *7 (3d Cir. 2006).  An employer "satisfies its burden of production by introducing evidence, which taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.

---

[3] We simply have no reason to doubt the veracity of Bartholomew's unequivocal testimony that he was unaware of Plaintiff's complaint when he terminated her.. It seems entirely logical that he was unaware of an investigation undertaken and completed by his predecessor, Kishbaugh, that culminated in no action being taken against Pavalko.  Plaintiff disputes Bartholomew's statement that he was unaware of her complaint, claiming that Pavalko specifically told Bartholomew that he was under investigation and that it "involved" Plaintiff. (PCS, ¶127).  However, a review of Pavalko's deposition testimony indicates that Pavalko testified that told Bartholomew he had been investigated, but he did not remember if he told Bartholomew that the investigation related to alleged sexual harassment. Pavalko also testified that he *did not* tell Bartholomew who the employee was that had lodged a complaint against him. (Pavalko Dep., pp. 136, 153-154).

1994); see also Klimczak v. Shoe show Cos., 420 F. Supp. 2d 376, 383 (M.D.Pa. 2005)(Caputo, J.).   "The defendant's burden to prove a legitimate nondiscriminatory reason is relatively light.   The defendant is only required to prove that its actions could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required."  Walters v. Potter, 2007 U.S. Dist. LEXIS 15167, *19-20 (M.D. Pa., Mar. 5, 2007)(Connor, J.)(internal citations omitted).

Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination – that Bartholomew believed she had stolen food. Bartholomew had previously warned Plaintiff about taking food, including croutons, without paying for it.  We have no reason to doubt Bartholomew's belief that Plaintiff had stolen food on the night she was terminated, and accordingly find that the Defendant has demonstrated a legitimate, nondiscriminatory reason for Plaintiff's termination.

Once an employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, a plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination." Johnson, 2007 U.S. App. LEXIS 1914 at *4-5.  To establish pretext Plaintiff must submit evidence which:

(1) casts doubt on the legitimate reason proffered by the employer such that a factfinder could reasonably conclude that the reason was a fabrication; or

(2) allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination.

Id. at *5. "The plaintiff must point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" such that a factfinder "could rationally find them 'unworthy of credence' and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action." Simpson v. Kay Jewelers, 142 F.3d 369, 644 (3d Cir. 1998)(citations omitted).

As the Defendant notes, Plaintiff candidly admits that she told Bartholomew that she had eaten croutons, but Plaintiff has provided no evidence to show why Bartholomew's belief that she stole food was "so plainly wrong that it cannot have been the employer's real reason." Morrissey v. Luzerne County Cmty. Coll., 117 Fed. Appx. 809, 813-814 (3d Cir. 2004). Furthermore, the fact that Cracker Barrel has a history of terminating employees, regardless of sex or protected activity, for stealing food (i.e. Sweet and Wapinsky), is evidence that Defendant's articulated reason is *not* pretext.

Accordingly, we shall grant summary judgment on Plaintiff's retaliatory

termination claim inasmuch as it is appropriate to do so where "the record clearly

demonstrates that [plaintiff's] supervisors were unaware of [the plaintiff's] prior

EEO activity." <u>Doe v. Winter</u>, 2007 U.S. Dist. LEXIS 25517, *27 (M.D.Pa., Apr.

5, 2007)(Kane, C.J.).

### D. **Retaliatory Harassment Claim**

Defendant moves the Court to grant summary judgment in its favor on

Plaintiff's retaliatory harassment claim.  To establish a claim of retaliatory

harassment, Plaintiff must show that: (1) she suffered intentional discrimination

because of her protected activity; (2) that the discrimination was severe or

pervasive; (3) that the discrimination detrimentally affected her; (4) that the

discrimination would have detrimentally affected a reasonable person in like

circumstances; and (5) a basis for employer liability is present.  <u>See</u> <u>Hamera v.</u>

<u>County of Berks</u>, 2006 U.S. Dist. LEXIS 47485, *9 (E.D. Pa., Jul. 12, 2006).

Other than being orally warned by Bartholomew not to steal any more food

after he witnessed her eating croutons, Plaintiff was never disciplined, suspended,

written up, reprimanded, or counseled by any manager at any time prior to her

termination.  Plaintiff alleges that after her complaint about Pavalko's conduct: (1)

Casaldi ignored her; (2) some of her coworkers ostracized her; (3) she was

scheduled for fewer hours; (4) managers "nitpicked" her performance;) and (5)

Kishbaugh instructed her not to solicit witnesses at the store, called her into the office while she was working, and told her to "move on" from the harassment complaint.

As Defendant accurately submits, with respect to the conduct attributed to Casaldi and Plaintiff's co-workers, Title VII is not intended to "cure a 'cold shoulder' or ostracism by co-workers," <u>Skrocki v. Carpenter Tech. Corp.</u>, 2007 U.S. Dist. LEXIS 23544, *19 (E.D. Pa., Mar. 29, 2007), nor is it intended to "set forth a general civility code for the American workplace." <u>Hanani v. State of New Jeresey Dep't of Envtl. Protection</u>, 2006 U.S. App. LEXIS 27960, *24 (3d Cir. 2006).   Title VII is intended to rid the workplace of illegal conduct that is objectively severe or pervasive.  We do not find that the conduct alleged by Plaintiff satisfies the exacting definition of "severe and pervasive." <u>See</u> <u>infra</u>, Plaintiff's Hostile Work Environment Claim, pp. 16-19.

Plaintiff has not established that she suffered any detrimental conduct, during the passage of time between the lodging of her complaint and her termination.  Furthermore, the conduct alleged by Plaintiff, even if construed as detrimental, is not objectively "severe or pervasive."  Accordingly, we shall enter summary judgment in favor of the Defendant on Plaintiff's retaliatory harassment claim.

**CONCLUSION**:

It is beyond peradventure that Defendant's Associate Manager Pavalko engaged in intermittently boorish behavior that was directed towards Plaintiff for a period of approximately one month.  But upon her appropriate complaint, it is clear that Defendant followed the correct protocols in handling the situation.  As noted, Plaintiff admits that thereafter the offensive conduct by Pavalko generally ceased. Since her termination some seven months later, Plaintiff has endeavored to use the Pavalko incidents as the wellspring for the various causes of action herein asserted. While this Court in no way condones behavior of the type exhibited by Pavalko, it is clear to us that the multiple harms Plaintiff asserts befell her, culminating in her termination, either do not raise the level of cognizable claims or are the product of her own violation of Defendant's policies.

Accordingly, for the foregoing reasons, we shall grant the Defendant's Motion for Summary Judgment.  Summary judgment shall be entered in favor of the Defendant on all of Plaintiff's claims.  An appropriate Order shall issue.